# United States Court of Appeals
## For the First Circuit

———————————————

No. 00-1646

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ A. LÓPEZ-LÓPEZ,

Defendant, Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

———————————————

Before

Selya and Lynch, Circuit Judges, and

Schwarzer,[*] Senior District Judge.

———————————————

Laura Maldonado Rodriguez, with whom Efren Irrizarry Colón was on brief, for appellant.
Matthew M. Collette, Appellate Staff Attorney, with whom Robert D. McCallum, Jr., Assistant Attorney General, Guillermo Gil, United States Attorney, and Douglas N. Letter, Appellate Staff Attorney, were on brief for appellee.

———————————————

July 18, 2002

———————————————

——————————————

[*]The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California sitting by designation.

**SCHWARZER, <u>Senior District Judge</u>.** José A. López-López pled guilty to two counts of delivering adulterated milk into interstate commerce in violation of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331(a), 333(a)2), and 18 U.S.C. § 2. The district court sentenced him to eighteen months' imprisonment followed by two years supervised release, and ordered him to pay a $200 special assessment. We have jurisdiction of his appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. 3742(a), and affirm.

## FACTUAL BACKGROUND

Defendant was a dairy farmer in Arecibo, Puerto Rico, engaged in the commercial production of milk. On at least five occasions over a seven-month period, defendant, together with delivery truck drivers, participated in a scheme to add water and salt to the milk produced at his farm. The adulterated milk was then delivered to a processing plant. The water was added to increase the amount of milk sold and salt was added to mask the addition of water and avoid detection of the adulterated milk at the processing plant. Defendant furnished the water and salt and paid the truck drivers. Defendant and the truck drivers used contaminated water and filthy hoses. The drivers transported the milk to the processing plant's silos, where it became mixed with other milk delivered to the plant and where it was processed for distribution in Puerto Rico and the continental United States. As a result of the scheme defendant was paid for the increased amount of milk delivered. Had the adulteration been discovered, however, it would have been considered worthless and been discarded. The

addition of the adulterated milk to the contents of the silos, moreover, created a clear health risk to consumers.

## DISCUSSION

## I. FAILURE TO CONTINUE THE SENTENCING HEARING

Defendant contends that he was denied due process because the district court failed to continue the sentencing hearing, even though the Presentence Report (PSR) and the addendum were not timely delivered to counsel. Rule 32(b)(6)(A) of the Federal Rules of Criminal Procedure requires the probation officer to furnish the PSR to defendant not less than thirty-five days before the sentencing hearing, unless defendant waives this minimum period; there is no record of defendant having waived.[1] Here, the PSR was delivered approximately fourteen days before the hearing. Rule 32(b)(6)(B) requires that the parties within fourteen days after receiving the PSR communicate any objections to each other in writing.[2] Here, the government submitted its objections to the PSR approximately one week before the hearing, and it failed to deliver a copy to defendant until the commencement of the hearing.

---

[1]"Not less than 35 days before the sentencing hearing--unless defendant waives this minimum period--the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government." FED. R. CRIM. PRO. 32(b)(6)(A).

[2]"Within 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report." FED. R. CRIM. PRO. 32(b)(6)(B).

Finally, Rule 32(b)(6)(C) requires the probation officer to submit the PSR with an addendum setting forth unresolved objections not later than seven days before the hearing.[3] Here, defendant did not receive the addendum until four days before the hearing and appears not to have received the government's objections to the PSR until immediately before the hearing.

We ordinarily review the district court's failure to continue the sentencing hearing for abuse of discretion. See United States v. Marrero-Ortíz, 160 F.3d 768, 777 (1st Cir. 1998). Defense counsel, after complaining about the late receipt of the government's objection, did not claim surprise and voiced no objection to the court's going forward with sentencing, much less move for a continuance. See id. (stating that untimely receipt of the addendum to the PSR although in violation of Rule 32(b)(6)(C) is insufficient standing alone to establish undue surprise). To the contrary, counsel acceded to the court's wish to proceed and gave no indication of lack of preparation.

While we perceive no abuse of discretion in the court's proceeding with the sentencing hearing in these circumstances, we do not mean to minimize the importance of the time limits specified in Rule 32 or turn a blind eye to the indifference to them shown by the government and the probation officer in this case. Those time

---

[3]"Not later than 7 days before the sentencing hearing, the probation officer must submit the presentence report to the court, together with an addendum. . . . At the same time, the probation officer must furnish [copies] to the defendant, the defendant's counsel, and the attorney for the Government." FED. R. CRIM. PRO. 32(b)(6)(C).

-4-

limits are no mere technicalities; they are integral to the fair and orderly process of imposing sentence. They are mandatory and we expect compliance with them.

Defendant also contends that the failure to continue the hearing and afford him more time to respond to the addendum violated his due-process rights. Absent plain error, an issue not presented to the district court cannot be raised for the first time on appeal. United States v. Chaklader, 987 F.2d 75, 76 (1st Cir. 1993). Even if there were error in the proceedings, the error claimed by defendant certainly did not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993)(internal quotations omitted).

Defendant argues that had he timely received the addendum, he would have been prepared at sentencing to discuss the disagreement between the government and the probation officer regarding the appropriate enhancement for his leadership role. In its objections, the government argued for a four-level enhancement for his role in the offense. Rejecting this argument, the addendum stated that a four-level enhancement would be inappropriate because there were only four participants, not five as required by Sentencing Guideline § 3B1.1(a). U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(A). At sentencing, as discussed below, the court applied a four-level enhancement but it did so based not on the number of participants but on defendant's "otherwise extensive" conduct, a theory not addressed by the government or the addendum. Since the

-5-

arguments in the addendum turned out to be irrelevant to the court's application of the enhancement, defendant's failure to receive it earlier did not adversely affect counsel's ability to prepare. Hence, the delay did not affect the sentencing proceeding's fairness, integrity or public reputation.

## II.  ENHANCEMENT FOR MORE THAN MINIMAL PLANNING PURSUANT TO SENTENCING GUIDELINES § 2F1.1(b)(2)(a)

Defendant contends that the court erred in determining that the offense involved more than minimal planning, resulting in a two-level enhancement pursuant to Sentencing Guidelines § 2F1.1(b)(2)(a). We review for clear error. See United States v. Chapman, 241 F.3d 57, 62 (1st Cir. 2001). "More than minimal planning" exists "if significant affirmative steps were taken to conceal the offense" or in "any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S. Sentencing Guidelines Manual § 1B1.1, cmt. 1(f) (1998).

The court found that defendant engaged in more than minimal planning based on his affirmative steps to conceal the offense. As defendant admitted, the sole purpose of adding the salt was to conceal the milk adulteration. Moreover, defendant's repeated acts, occurring over a period of seven months, cannot be characterized as "purely opportune." Defendant had the salt ready and had prefilled the milk vats with water in preparation for the adulteration. See United States v. Rust, 976 F.2d 55, 57 (1st Cir. 1992) ("conduct is 'purely opportune' only if it is spur of the

-6-

moment conduct, intended to take advantage of a sudden opportunity"). His actions did not "occur unexpectedly" and "without previous notice." Chapman, 241 F.3d at 62. We find no clear error.

## III. ENHANCEMENT FOR BEING A LEADER/ORGANIZER PURSUANT TO SENTENCING GUIDELINES § 3B1.1(a)

Defendant contends that the court erred in imposing a four-level enhancement for being "an organizer or leader of a criminal activity . . . that was otherwise extensive" pursuant to Guideline § 3B1.1(a). We review a role in the offense determination for clear error. See United States v. Cadavid, 192 F.3d 230, 237 (1st Cir. 1999).

A court making a four-level role-in-the-offense adjustment under Guideline § 3B1.1(a) must first determine whether the defendant acted as an organizer/leader of a specific criminal activity. If so, the court asks the separate question of whether that criminal activity involved five or more participants or was "otherwise extensive." United States v. D'Andrea, 107 F.3d 949, 957 (1st Cir. 1997).

In determining whether a defendant acted as organizer or leader, the court considers, inter alia:

> the exercise of decision making authority, the nature of the participation in the commission of the offense, . . . the degree of participation in planning or organizing the offense, [and] the nature and scope of the illegal activity.

U.S. Sentencing Guidelines Manual § 3B1.1, cmt. 4. The district court's finding that defendant was "the owner of the

-7-

farm and without his participation there can be no adulterated milk" supports its determination that he was an organizer/leader of the criminal activity.

In determining whether a criminal activity is "otherwise extensive," the court considers the totality of the circumstances, "including not only the number of participants, but also the width, breadth, scope, complexity and duration of the scheme." United States v. Dietz, 950 F.2d 50, 53 (1st Cir. 1991). Participants include those who unknowingly participated in the activity. U.S. SENTENCING GUIDELINES MANUAL § 3B1.1, CMT. 3; D'Andrea, 107 F.3d at 957. The district court found that "the fraud . . . allowed [the] unknowing services of many to be utilized in putting this milk in the chain of commerce. . . . There were chemists, the employees, the milk industry people, who relied on this and unknowingly gave their services in order to put this milk in the chain of commerce." The court did not clearly err in concluding that the activity was "otherwise extensive."

We find no clear error in the court's application of the enhancement.

## IV. ALLOCUTION

Finally, defendant contends that the district court erred when it announced its sentencing findings before giving him an opportunity for allocution. Rule 32(c)(3)(C) requires the court, before imposing sentence, to give the defendant an opportunity "to make a statement and to present any information in mitigation of

the sentence." FED. R. CRIM. P. 32(c)(3)(C).  Here, after the court announced its sentencing findings, government counsel advised the court that it had not yet heard defendant's allocution.  The court immediately responded: "You are absolutely correct.  I never heard him.  I have to backtrack here and ask him whether he has anything to say.  And if he does, I will consider it, even if I have to change the sentence that I imposed."  The defendant then made his statement expressing remorse and the court, after hearing it, eliminated the fine it had previously announced. "When a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative and that the judge will consider the defendant's statement before imposing a sentence." United States v. Burgos-Andujar, 275 F.3d 23, 30 (1st Cir. 2001). Here, the facts validate that assumption.  Where the record shows that the sentencing judge has properly considered defendant's allocution when imposing sentence, even if the judge had previously announced a tentative sentence, Rule 32(c)(3)(C) is satisfied.  Id. Accordingly, we find no error.

**Affirmed**.