# United States Court of Appeals
## For the First Circuit

No. 14-2246

UNITED STATES OF AMERICA,

Appellee,

v.

RENÉ MÁRQUEZ-PÉREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lipez, Circuit Judges.

Lydia J. Lizarríbar-Masini, with whom Camille Lizarríbar-Buxó
and Lizarríbar Law Office were on brief, for appellant.
Thomas F. Klumper, Assistant United States Attorney, with
whom Nelson Pérez Sosa, Assistant United States Attorney, Chief,
Appellate Division, and Rosa Emilia Rodríguez-Vélez, United States
Attorney, were on brief, for appellee.

August 30, 2016

**HOWARD**, **Chief Judge**. A fair proceeding before a fair tribunal is a basic requirement of due process. See In re Murchison, 349 U.S. 133, 136 (1955). Claiming that judicial misconduct, inadequate preparation time, and attorney ineffectiveness denied him a fair proceeding, René Márquez-Pérez asks us to vacate his conviction and sentence. We hold that the judge's conduct of the trial, though in one instance unfortunate, did not prejudice Márquez; and that the judge did not deny him adequate preparation time. We are less sanguine about counsel's performance; because we find sufficient signs of ineffectiveness, we remand this case to the district court for further proceedings.

## I.

A federal jury convicted Márquez of possessing drugs with intent to distribute, see 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug trafficking crime, see 18 U.S.C. § 924(c). See generally United States v. Márquez-Perez, 44 F. Supp. 3d 175 (D.P.R. 2014). The district court sentenced Márquez to fifty-three months for the drug convictions and sixty months for the firearm conviction, totaling 113 months, or roughly nine-and-a-half years. Márquez timely appealed his conviction and sentence.

## II.

Márquez first contends that the district judge's courtroom behavior denied him a fair trial. Although the judge's

comportment was flawless in most respects throughout the trial, he overreacted once, when, in response to counsel's attempt to object, he commanded the courtroom security officer to forcibly seat counsel down. Nevertheless, we sustain Márquez's conviction for lack of prejudice.

**A.**

Due process guarantees a fair trial, not a perfect one. See United States v. Ayala-Vazquez, 751 F.3d 1, 23-24 (1st Cir. 2014). To prevail on a judicial misconduct claim, a party must show that (1) the judge acted improperly, (2) thereby causing him prejudice. See United States v. Lanza-Vazquez, 799 F.3d 134, 143 (1st Cir. 2015). We consider both elements in light of the whole record. See Ayala-Vazquez, 751 F.3d at 23. We may address the elements in either order, and need not reach both if a party fails on one. See id. at 25.

Our cases have generally confronted two types of judicial misconduct during a trial. The first occurs when judges commit errors of law, as by performing acts categorically beyond their authority. For example, judges exceed their authority when they testify as witnesses, or add to or distort the evidence. See Quercia v. United States, 289 U.S. 466, 471-72 (1933); United States v. Rivera-Rodríguez, 761 F.3d 105, 122 (1st Cir. 2014); United States v. Paiva, 892 F.2d 148, 159 (1st Cir. 1989). They also exceed their authority by opining to the jury on the

- 3 -

credibility of witnesses, the character of the defendant, or the ultimate issue.  See Quercia, 289 U.S. at 471; Ayala-Vazquez, 751 F.3d at 28.  Such acts are per se misconduct, although the judgment may still be sustained for lack of prejudice.  See Ayala-Vazquez, 751 F.3d at 27; Paiva, 892 F.2d at 159.

The second type of misconduct occurs when judges abuse their discretion.  See Ayala-Vazquez, 751 F.3d at 23.  The judge is the governor of the trial, and has broad discretion to participate in it.  See Lanza-Vazquez, 799 F.3d at 143.  A judge may "question witnesses"; "analyze, dissect, explain, summarize, and comment on the evidence"; and otherwise elicit facts that he deems necessary to a clear presentation of the case.  Ayala-Vazquez, 751 F.3d at 24.  Judges may also maintain the pace of the trial and ensure its proper conduct.  See Lanza-Vazquez, 799 F.3d at 143-44.  They may criticize counsel, and express "impatience, dissatisfaction, annoyance, and even anger": "a stern and short-tempered judge's ordinary efforts at courtroom administration" are not error.  Liteky v. United States, 510 U.S. 540, 555-56 (1994).  Where one party's conduct warrants a relatively heavier hand, the judge may intervene with proportional vigor and frequency.  See Lanza-Vazquez, 799 F.3d at 143-44; United States v. Rodríguez-Rivera, 473 F.3d 21, 27 (1st Cir. 2007); United States v. Gomes, 177 F.3d 76, 79-80 (1st. Cir 1999).

Nonetheless, judges may not misemploy these powers, as by favoring one party or appearing partial. See Rivera-Rodríguez, 761 F.3d at 111; Ayala-Vazquez, 751 F.3d at 24. They should be most cautious in front of the jury, which may be vulnerable to judges' "lightest word or intimation." Ayala-Vazquez, 751 F.3d at 28.

Márquez claims that the judge denied him a fair trial by repeatedly rebuking his counsel. These reproaches ranged from characterizing counsel's questions as "misleading," to chiding him to do his "homework," to directing the security officer to forcibly seat him. Excepting this last event, they were no more than "a stern . . . judge's ordinary efforts at courtroom administration." Liteky, 510 U.S. at 556. And although the judge rebuked counsel more often than he did the prosecutor, counsel's behavior warranted the added criticism.

For example, Márquez complains that the judge repeatedly interrupted counsel's cross-examination of a police officer and characterized counsel's questions as "misleading." Here, the court permissibly exercised its authority over the examination of witnesses to avoid juror confusion. See United States v. Ofray-Campos, 534 F.3d 1, 33 (1st Cir. 2008); Rodríguez-Rivera, 473 F.3d at 27. In one instance, counsel asked the officer whether "these are the pills you are referring to, correct?" The court characterized this as "misleading" because "[t]hat wasn't [the

officer's] testimony." Subsequently, counsel rephrased his question, and the court allowed it. Although the court could have spoken more mildly, it permissibly intervened to deter jury confusion.

Márquez also complains that the judge told counsel, at sidebar, that he needed to "do [his] homework." Here, the court permissibly exercised its discretion to rebuke counsel. See Liteky, 510 U.S. at 555-56; Ofray-Campos, 534 F.3d at 33. Counsel had asked the government's expert whether marijuana could be used as medicine, implying a permissible reason for Márquez's possession. The court called for sidebar, stated that marijuana is illegal in the jurisdiction, and admonished counsel to stop this line of questioning. Perplexingly, counsel responded that marijuana is legal in Colorado. The court retorted, "That's State. Do your homework." This assessment was supportable: marijuana's legality under Colorado state law was irrelevant to this federal prosecution for drug trafficking in Puerto Rico. Despite its gratuitous cheek, the court acted within its discretion in criticizing counsel.

In one instance, however, the judge overstepped his authority: in response to counsel's attempt to object, he ordered the security officer to force counsel to sit down. This took place during counsel's cross-examination of a police officer. The prosecutor had objected to a question, and midway through the

objection, counsel objected to the objection, igniting a judicial

flareup:

> THE COURT: Wait a minute. You are objecting to an objection?
>
> MR. BURGOS: Yes, sir.
>
> THE COURT: No, you are not. [Government, c]ontinue with your objection.
>
> MR. WALSH: Our understanding is, in his testimony he mentions -- he said he did not --
>
> MR. BURGOS: Objection.
>
> THE COURT: Sit down and shut up. Sit down and shut up while he makes his objection. Mr. Burgos, sit down.
>
> MR. BURGOS: Your Honor --
>
> THE COURT: Sit down.
>
> MR. BURGOS: We prefer --
>
> THE COURT: Sit down.
>
> MR. BURGOS: We prefer to go to the record.
>
> THE COURT: Sit down. Sit down, Mr. Burgos. Marshal, have him sit down.
>
> MR. BURGOS: We would like the jury to be --
>
> THE COURT: Sit down, Mr. Burgos. Have a seat, Mr. Burgos. Have a seat, Mr. Burgos.
>
> MR. BURGOS: Let the record show --
>
> THE COURT: Have a seat, Mr. Burgos.
>
> MR. BURGOS: -- the marshals are forcing me to my seat.

(emphasis added).

Subsequently, the back-and-forth continued, with counsel continuing to interrupt; and the judge threatening to find counsel in contempt, again ordering the courtroom security officer to seat him, and eventually removing the jury. Upon the jury's return, the judge gave curative instructions.

Counsel's actions were plainly contumacious. Initially, counsel had the right to press his claim, "even if it appear[ed] farfetched and untenable." Sacher v. United States, 343 U.S. 1, 9 (1952). "But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge -- his right is only respectfully to preserve his point for appeal." Id. Counsel's repeated interruption of the court transgressed this basic precept.

Confronted with this transgression, the trial judge had broad discretion to restore "dignity, order, and decorum" "essential to the proper administration of criminal justice." Illinois v. Allen, 397 U.S. 337, 343 (1970). A judge is entitled to verbally rebuke counsel. See Ofray-Campos, 534 F.3d at 33. And the judge may remove the jury and, as proper, threaten to or actually sanction counsel, find counsel in contempt, or report counsel for violating professional ethics rules. See Logue v. Dore, 103 F.3d 1040, 1046 (1st Cir. 1997); United States v. Polito, 856 F.2d 414, 417 (1st Cir. 1988).

- 8 -

A judge may even command physical force when "justified by an essential state interest -- such as the interest in courtroom security -- specific to the defendant on trial." Deck v. Missouri, 544 U.S. 622, 624 (2005). Absent an imminent physical threat, this generally means that judges may use force only "as a last resort." Id. at 628 (quoting Allen, 397 U.S. at 344). From these principles, it follows that a judge should not use physical force to subdue counsel's verbal arguments, while in the jury's presence, except in the most extraordinary circumstances. See United States v. Elder, 309 F.3d 519, 520 (9th Cir. 2002); Johnson v. Maryland, 722 A.2d 873, 875, 879-81 (Md. 1999) (collecting cases).

Here, for aught that appears, the trial judge did not command force to counter a physical threat or else as a last resort.[1] Rather, he directed the security officer to forcibly seat counsel to resolve a verbal dispute that had erupted just moments earlier. The judge did so in the presence of the jury, and without first exhausting other options, such as removing the jury and

---

[1] We need not decide whether a merely verbal rebuke of "sit down" and "shut up" in the jury's presence would have been misconduct. See generally Ofray-Campos, 534 F.3d at 33 (holding that similar rebuke made at sidebar was not judicial misconduct). Nor do we address whether a judge's threat to find contempt in the jury's presence would be error. Compare Sacher, 343 U.S. at 10 ("To summon a lawyer before the bench and pronounce him guilty of contempt is not unlikely to prejudice his client."), with Polito, 856 F.2d at 417-19 (holding that threat, made in the jury's presence, to report counsel for violating professional ethics rules was not prejudicial).

pronouncing a stern warning of sanction or contempt. Under these circumstances, the judge used force not as a last resort, but nearly as a first one. We are not indifferent to the difficult task that a trial judge sometimes faces in maintaining control of a courtroom, nor to the reality that a judge's demeanor while exercising that control will not always project unruffled serenity. On this record, however, we conclude that the judge's speedy resort to use of force was not consistent with "the very purpose of a court system to adjudicate controversies . . . in the calmness and solemnity of the courtroom according to legal procedures." Sheppard v. Maxwell, 384 U.S. 333, 350-51 (1966) (internal formatting omitted).

**B.**

Nonetheless, we sustain Márquez's conviction for lack of prejudice. Our prior decisions have consistently required proof of "serious prejudice," which we recently defined as "requiring 'a reasonable probability that, but for the claimed error, the result of the proceeding would have been different.'" Lanza-Vazquez, 799 F.3d at 145 (quoting Rivera–Rodríguez, 761 F.3d at 112); see also Logue, 103 F.3d at 1045 ("An inquiry into the judge's conduct of the trial necessarily turns on the question of whether the complaining party can show serious prejudice."). A reasonable probability is a probability "sufficient to undermine confidence in the outcome." United States v. Dominguez Benitez, 542 U.S. 74,

- 10 -

83 (2004) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)).

In analyzing prejudice, our cases regularly weigh three factors: (1) the nature and context of the error, (2) the presence of curative instructions, and (3) the strength of the evidence in support of the judgment. First, error is more likely to be prejudicial when a judge expresses or implies his own view of the case: of the relevant evidence, a witness's credibility, the defendant's character, or the ultimate issue. See Quercia, 289 U.S. at 471-72; Lanza-Vazquez, 799 F.3d at 145; Rivera-Rodríguez, 761 F.3d at 120; Ayala-Vazquez, 751 F.3d at 28. By contrast, a judge's mere displeasure at an attorney's litigation conduct is unlikely to prejudice a party. See Liteky, 510 U.S. at 555-56; Ayala-Vazquez, 751 F.3d at 20 n.16; Gomes, 177 F.3d at 80.

The context of the error also matters. Misconduct in the jury's presence is more likely to prejudice than that at sidebar. See Lanza-Vazquez, 799 F.3d at 144. Further, misconduct during the presentation of critical evidence is more likely to prejudice than that during testimony irrelevant to the defendant. Compare Rivera-Rodríguez, 761 F.3d at 123, with Ofray-Campos, 534 F.3d at 34. And a cumulative pattern of misconduct may cause prejudice where isolated misconduct would not. See Glasser v. United States, 315 U.S. 60, 83 (1942); Rivera-Rodríguez, 761 F.3d at 112.

Second, subsequent instructions may cure the taint. Curative instructions should remind the jury that it is the trier of fact, and that the conduct of neither counsel nor the judge is evidence or any indication of how to weigh the evidence or decide the case. See Ayala-Vazquez, 751 F.3d at 25-26. The court should give instructions promptly after a potential error, or in the final jury charge, or -- ideally -- at both times. See id. Some severe errors, however, cannot be cured. See Quercia, 289 U.S. at 472; Rivera-Rodríguez, 761 F.3d at 124 n.19.

Lastly, the stronger the evidence supporting the judgment, the lesser the risk of prejudice. See Lanza-Vazquez, 799 F.3d at 145; Rivera-Rodríguez, 761 F.3d at 120; Ayala-Vazquez, 751 F.3d at 26-27.

Márquez has arguably waived his claim for lack of adequate argument. See Lanza-Vazquez, 799 F.3d at 145. In any event, we find no prejudice.

First, the judge's ire "was directed solely to counsel's courtroom conduct and carried no suggestion that the defense case was weak or that the judge sided with the prosecutor." Gomes, 177 F.3d at 80. True, the error did take place in the jury's presence; this is the sole factor that weighs in favor of prejudice. But the error did not affect critical evidence, or otherwise deter Márquez from presenting his case; indeed, the judge eventually overruled the government's objection in favor of Márquez. And

Márquez has not shown cumulative error, but only this single instance.

Second, the judge gave curative instructions both promptly after the error, and at the final jury charge. Each time, the court admonished the jury to disregard the court's rebukes.

Finally, the evidence against Márquez -- video, testimonial, and physical evidence -- was overwhelming. The government introduced, among other evidence, surveillance videos showing Márquez testing a firearm immediately before furtively selling small items hidden in handkerchiefs; physical evidence, seized from Márquez's car and his mother's house, including three guns, large amounts of drugs packaged in baggies, and drug paraphernalia (scales, empty baggies, a sieve, and weights); and police officer testimony that Márquez confessed to owning the drugs and guns, and to being a drug dealer. See Márquez-Perez, 44 F. Supp. 3d at 182-86.

Weighing these factors, we find no prejudice, so we deny Márquez's judicial misconduct claim.

### III.

Next, Márquez claims that the district court abused its discretion in denying his motion to continue the trial date. He argues that he needed a one-day continuance to watch the government's video evidence, and that but for the denial of his motion, he would have seen the videos and pled guilty, resulting

- 13 -

in a lesser sentence.  Finding no abuse of discretion, we reject Márquez's claim.

Having adequate time to prepare a defense is implicit in due process and the right to counsel.  See Ungar v. Sarafite, 376 U.S. 575, 589 (1964).  Nevertheless, "[t]rial judges necessarily require a great deal of latitude in scheduling trials." Morris v. Slappy, 461 U.S. 1, 11 (1983).  To prevail on appeal, a party must show that the denial was an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay," such that "no reasonable person could agree with the judge's ruling."  See United States v. Robinson, 753 F.3d 31, 41 (1st Cir. 2014) (citing Morris, 461 U.S. at 11-12).  We first consider the reasons presented to the district court in support of the continuance request.  See Ungar, 376 U.S. at 589; United States v. Delgado-Marrero, 744 F.3d 167, 195 (1st Cir. 2014).  We may also weigh other relevant factors such as the moving party's diligence in light of the complexity of the case, the time available for preparation, the timeliness of his motion, and other available assistance; the party's contribution to his perceived predicament; and the extent of inconvenience to others, including the court, the other party, and witnesses.  See Delgado-Marrero, 744 F.3d at 195-96.  In addition, the moving party must show a reasonable probability of specific prejudice, see id. at 199, whether through evidence presented contemporaneously to the

district judge or later-developed evidence consistent with the original request, see United States v. Rodríguez-Dúran, 507 F.3d 749, 765 (1st Cir. 2007).

Beginning with the reasons presented to the district court, Márquez alleged that he needed one extra day to watch the government's videos with defense counsel. He had been unable to watch the videos earlier due to software issues at the detention facility, despite repeated attempts to resolve these issues with the government. He allegedly needed to watch the videos to decide whether to change his plea. Moreover, he did not benefit from counsel's advice about the videos because counsel had not watched them either: although counsel could have watched the videos by himself, he admitted to the district judge that he "decided not to see them, for the record."

Márquez's desire to review the videos with defense counsel is understandable, as is his frustration with the perceived delay in the government's repair of its technology. Nonetheless, counsel's admission that he simply "decided not to see" the videos practically concedes that Márquez's (or more precisely, his counsel's) lack of diligence contributed significantly to his predicament. Due process does not demand a continuance when

"counsel knowingly put himself in this situation."  United States

v. Flecha-Maldonado, 373 F.3d 170, 175 (1st Cir. 2004).[2]

Counsel's dilemma was exacerbated by his tardiness in filing the motion.  He filed the motion to continue at 5:40 p.m. on the last working day before the start of trial -- an untimely filing.  See United States v. Maldonado, 708 F.3d 38, 43 & n.2 (1st Cir. 2013); United States v. DeCologero, 530 F.3d 36, 79 n.27 (1st Cir. 2008); United States v. Rodríguez-Marrero, 390 F.3d 1, 22 (1st Cir. 2004).  And he offered no explanation for his belated motion; nor was the reason for the delay in filing evident, for the perceived predicament "would have been apparent long before." United States v. Rosario-Otero, 731 F.3d 14, 18 (1st Cir. 2013). Indeed, he had received the bulk of the videos two months before trial and knew of the software issues three weeks before trial. Cf. United States v. Orlando-Figueroa, 229 F.3d 33, 41 (1st Cir. 2000) (finding no abuse of discretion where defendants had received government tapes two months before trial).

Nor were the videos so complex or lengthy as to objectively warrant a longer preparation period.  See Rodríguez-Dúran, 507 F.3d at 765.  Márquez contends that some of the videos

---

[2] Although seemingly unfair to Márquez in this instance, "[u]nder our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent.'"  Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 92 (1990)).

were produced just over a week before trial and that they totaled "hours" in length.  In fact, thirty of the thirty-four videos were produced two months prior to trial;[3] and the government had notified Márquez of the specific clips, just "several minutes" long, that it intended to use at trial.  In analogous circumstances, we have affirmed a district court's judgment that a month was sufficient to review hours of calls and 700 pages of documents.  See United States v. Williams, 630 F.3d 44, 48 (1st Cir. 2010).

Márquez has also failed to show that he was prejudiced in deciding whether or not to plead guilty.[4]  Even if we assume that prejudice to a defendant's plea decision is cognizable in

---

[3] The thirty videos comprise all of the surveillance and firearm test videos.  The four subsequently produced videos show the police executing search warrants.

[4] The government argues that Márquez has waived this argument because he failed to raise it below, relying on United States v. Desir, 273 F.3d 39, 43 (1st Cir. 2001).  We are not convinced that Márquez failed to raise this claim below, and even if we were, we would review for plain error.  See United States v. Lopez-Lopez, 295 F.3d 165, 169 (1st Cir. 2002).  In any event, even applying the more defendant-friendly standard for preserved claims, we find no error in the district court's denial.

Relatedly, however, we do deem waived any argument that Márquez was prejudiced in his preparation for trial or motions to suppress.  Márquez addresses these in one sentence of his opening brief, so they are waived for lack of adequate development.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  To the extent that Márquez asks us to consider arguments raised in his district court filing by merely citing the filing in his brief, those arguments are also waived.  See United States v. Burgos-Montes, 786 F.3d 92, 111 (1st Cir. 2015).

this context, see Rodríguez-Dúran, 507 F.3d at 766, a defendant must show that, but for the denial, there was a reasonable probability that (1) the plea offer would have been consummated by the defendant, the government, and the court; and (2) the plea would have been to a lesser conviction or sentence than that actually imposed, see Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012).

Márquez makes two arguments. First, during his presentence interview after his conviction, he told the probation officer that, had he seen the videos before trial, he "may have considered the option of pleading guilty." Second, although the government offered Márquez a plea deal of thirteen years (or 156 months, which is more than his actual sentence of 113 months), Márquez may have been able to negotiate the proposed sentence downward. Notably, he contends that the government's offer comprised three years for the drug offenses and a mandatory minimum of ten years for the firearm count, see 18 U.S.C. § 924(c)(1)(B)(i). But as the government realized before trial, the relevant ten-year mandatory minimum provision expired in 2004, so Márquez was subject only to a five-year mandatory minimum. See United States v. Laureano-Velez, 424 F.3d 38, 40 n.1 (1st Cir. 2005); 18 U.S.C. §§ 921 note, 924 note (citing Pub. L. No. 103-322, 108 Stat. 1796, § 110105(2) (1994)). Accounting for this

discrepancy, Márquez could potentially have sought to negotiate a lesser sentence of eight years, or 96 months.

Notwithstanding these considerations, "the possibility that a plea bargain acceptable to all could have been reached within a reasonable period of time is too speculative." Rodríguez-Dúran, 507 F.3d at 766.  It is unclear whether Márquez would have pled guilty at all.[5]  Further, the parties apparently had yet to engage in plea negotiations after the government's initial offer, and the government could have well refused to engage in them on the first day of trial.  See id. at 764.  The government also maintains that it would not have agreed to a sentence less than what Márquez eventually received.  Additionally, the court's previously announced plea deadline had passed, and it may have rejected any plea as untimely.  See United States v. Gamboa, 166 F.3d 1327, 1331 (11th Cir.1999); United States v. Ellis, 547 F.2d 863, 868 (5th Cir. 1977).  In short, Márquez has not shown a reasonable probability that the parties would have reached an agreement within a single day, that such an agreement would have

_____

[5] During the trial, a Deputy U.S. Marshal sua sponte informed the judge that Márquez would have pled guilty had he seen the videos prior to trial.  The judge then asked Márquez whether he had said this to the marshal and whether he would have pled had he seen the videos. Márquez responded, "no." The government contends that this shows that Márquez would not have pled, while Márquez says that he meant "no, he did not tell this to the marshal." Regardless of which construction we adopt, Márquez has not affirmatively shown that he would have chosen to plead guilty.

been to a lesser sentence, and that the district court would have agreed to the untimely plea.

In these circumstances, the district court was not obliged to rescue Márquez from his largely self-inflicted quandary. We find no abuse of discretion.

## IV.

Lastly, Márquez claims that his trial attorney denied him effective assistance of counsel by neglecting to review the government's video evidence before trial. Similar to his continuance claim, Márquez argues that, but for counsel's failure to watch these videos and advise Márquez accordingly, Márquez would have pled guilty, resulting in a lesser sentence. Although Márquez has not conclusively shown ineffectiveness on the record before us, we find sufficient signs to remand for an evidentiary hearing.

The Sixth Amendment right to counsel entitles a defendant to effective counsel during plea negotiations. See Missouri v. Frye, 132 S. Ct. 1399, 1407-08 (2012); Lafler, 132 S. Ct. at 1384. We assess a claim of ineffectiveness in plea negotiations under the two-part test of Strickland v. Washington, 466 U.S. 668 (1984), under which a defendant must show deficient performance and prejudice. Lafler, 132 S. Ct. at 1384. We measure deficient performance against an "objective standard of reasonableness" "under prevailing professional norms," considering the totality of the circumstances and deferring heavily to

- 20 -

counsel's judgments.  <u>Strickland</u>, 466 U.S. at 688.  Prejudice exists if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

When faced with an ineffective assistance claim on direct appeal, we typically deny the claim due to an insufficiently developed record, leaving defendants to bring a collateral attack under 28 U.S.C. § 2255.  <u>See</u> <u>United States</u> v. <u>Constant</u>, 814 F.3d 570, 578 (1st Cir. 2016).  In rare cases where the record is sufficiently developed, we may resolve the claim on direct appeal. <u>See</u> <u>id.</u>  Moreover, even on an inchoate record, we will sometimes remand for an evidentiary hearing where the defendant has identified in the record "sufficient indicia of ineffectiveness." <u>Id.</u>; <u>accord</u> <u>United States</u> v. <u>Colon-Torres</u>, 382 F.3d 76, 85 (1st Cir. 2004); <u>United States</u> v. <u>Theodore</u>, 354 F.3d 1, 3 (1st Cir. 2003).[6]

---

[6] We at times have also remanded for an evidentiary hearing when the defendant affirmatively makes out a colorable claim of ineffectiveness, <u>see</u> <u>United States</u> v. <u>De Alba Pagan</u>, 33 F.3d 125, 18 (1st Cir. 1994); <u>accord</u> <u>United States</u> v. <u>Bell</u>, 708 F.3d 223, 225 (D.C. Cir. 2013); <u>United States</u> v. <u>Meacham</u>, 567 F.3d 1184, 1187 (10th Cir. 2009), or else demonstrates "special circumstances," <u>United States</u> v. <u>Vega Molina</u>, 407 F.3d 511, 531 (1st Cir. 2005).  We have not addressed the relationship between these standards.  Nor have we confronted whether our discretion to remand an action on direct appeal extends to every case in which

Because Márquez has identified sufficient signs of ineffectiveness, we remand for an evidentiary hearing. First, counsel's neglecting to review the government's video evidence indicates deficient performance. The Sixth Amendment requires counsel to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The American Bar Association Standards for Criminal Justice -- which are among those standards that the Supreme Court has said may help guide our assessment of what is reasonable, see Frye, 132 S. Ct. at 1408 -- require counsel to

> conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities.

1 ABA Standards for Criminal Justice 4-4.1 (3d ed. 1993); accord Rompilla v. Beard, 545 U.S. 374, 387 & n.6 (2005).

Under these principles, defense counsel generally must review documents where (1) "counsel knows the prosecution will

---

an evidentiary hearing would be warranted on a post-conviction motion to vacate under 28 U.S.C. § 2255, see Owens v. United States, 483 F.3d 48, 61 (1st Cir. 2007); Rivera Alicea v. United States, 404 F.3d 1, 4 (1st Cir. 2005). The parties have not briefed these issues, and we need not decide them; regardless of which standard we apply, we would remand.

probably rely" on the documents to present its case, and (2) the documents are easily accessible.  Rompilla, 545 U.S. at 377, 389-90.  In Rompilla, the Supreme Court found ineffective assistance where defense counsel neglected to examine a public court file of the defendant's prior convictions, despite knowing that the state would seek the death penalty based on the convictions.  See id. at 384-85, 387.

Here, counsel's failure to watch the videos appears to fall below Rompilla's standard.  First, counsel knew that the government probably would rely on the videos because the government formally designated the videos as evidence-intended-for-trial.  See Fed. R. Crim. P. 12(b)(4).  Counsel's failure to watch the videos was exacerbated by his own beliefs, as expressed in a motion that he filed, that the videos contained exculpatory evidence.  Second, the videos were easily accessible because the government produced them in discovery, presenting most of the videos to the defense two months before trial.

We also find signs of prejudice.  Similar to his continuance challenge, Márquez argues that, but for his attorney's deficient performance, he would have pled guilty and received a lesser sentence.  This prejudice argument is, however, stronger than the other for two reasons.

First, the timing is different.  In challenging the denial of his motion for a continuance, Márquez asks us to

- 23 -

speculate that the parties would have reached an agreement to a lesser sentence in a single day, and that the district court would have accepted the agreement notwithstanding the past plea deadline. These tenuous inferences do not infect his ineffectiveness challenge, for competent defense counsel could have apprised Márquez of the videos' content at an earlier date.

Second, the burdens of proof differ. To ultimately prevail on either a continuance or ineffective assistance claim, a defendant must show a reasonable probability of a better outcome. To secure a remand for a hearing on his ineffectiveness claim, however, he need only show sufficient signs of ineffectiveness as a whole. Márquez has met this lesser burden by setting forth clear markers of deficient performance and potential markers of prejudice. As explained above, there is evidence in the record that Márquez would have considered pleading guilty had he seen the videos before trial, and that the government had reason to offer him a more favorable plea to reflect the lower mandatory minimum on the firearm count.

**V.**

Accordingly, we **AFFIRM** Márquez's conviction, but we **REMAND** the action to the district court for further proceedings not inconsistent with this opinion. The district court should conduct a hearing to assess whether counsel provided ineffective

assistance, and, if so, grant the proper remedy.  See Lafler, 132 S. Ct. at 1388-90.